UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **AMERICAN SAFETY, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-3451** |
| **HAROLD ALGER et al.** | **SECTION: "G"** |

### ORDER AND REASONS

This litigation arises out of an alleged breach of contract for the sale of personal protective equipment ("PPE").[1] Plaintiff American Safety, LLC ("American Safety") brings state law claims against Defendants Harold Alger, Seneca Mortgage Services, LLC, Adam Russell, Global Resource Broker, Inc., Stephen Fox, S. Fox Law Group PC, Sam Bauer, and Bauer & Bauer, LLC (collectively, "Defendants").[2]

Before the Court is American Safety's "Motion for Summary Judgment and to Enforce

---

[1] Rec. Doc. 1.

[2] *Id.* American Safety also named as defendants JV Doren BV, LLC, Transcoop Trading, LLC, Vere Whyte, Rodney Clements, and Unidentified Party ABC Insurance Co. *Id.* This Order concerns only the defendants named in the instant motion and the settlement agreement. *See* Rec. Docs. 74, 74-3.

Furthermore, the Court notes that American Safety has adequately pled the diversity of the parties. The Complaint states that American Safety is a two-member Louisiana limited liability company, with its two members both citizens of Louisiana. Rec. Doc. 1 at 1–2. In the Complaint, American Safety alleges that Harold Alger is a citizen of Indiana. *Id.* at 2. The Complaint alleges that Seneca Mortgage Services, LLC is a two-member limited liability company, with its two members both citizens of Indiana. *Id.* The Complaint asserts that Adam Russell is a citizen of Florida. *Id.* Next, the Complaint asserts that Global Resource Broker, Inc. is incorporated in Delaware and has its principal place of business in Florida. *Id.* The Complaint alleges that Stephen Fox is a citizen of Connecticut or New York. *Id.* at 3. Further, the Complaint asserts that S. Fox Law Group PC is a professional corporation with its principal business address in New York. *Id.* The Complaint asserts that Sam Bauer is a citizen of Indiana. *Id.* at 2. Finally, the Complaint avers that Bauer & Bauer, LLC is a two-member limited liability company, with its two members both citizens of Indiana. *Id.*

1

Settlement Agreement."[3] In the motion, American Safety asserts that it entered into a settlement agreement with Defendants in July 2021, but that Defendants have failed to comply with the agreement.[4] American Safety moves the Court to enter summary judgment against Defendants and to enforce the settlement agreement.[5]

American Safety noticed the motion for submission on October 20, 2021.[6] Pursuant to Local Rule 7.5, opposition to a motion must be filed eight days before the noticed submission date. To date, Defendants have filed no opposition, and therefore the motion is deemed to be unopposed. This Court has authority to grant a motion as unopposed, although it not required to do so.[7] Considering the motion, the memorandum in support, the record, and the applicable law, the Court grants the motion, enforces the settlement agreement, and enters judgment against Defendants in the amount of $534,066.46.

## I. Background

### A.   *Factual Background*

In the Complaint, American Safety alleges that it provides PPE to hospitals and other businesses.[8] American Safety further alleges that following the increase in demand for N95 masks caused by the COVID-19 pandemic, it entered into an Escrow Agreement with Defendants (including numerous individual defendants and financial institutions) to effectuate the sale of over

---

[3] Rec. Doc. 74.

[4] *Id.* at 2.

[5] *Id.* at 4–5.

[6] Rec. Doc. 74-6.

[7] *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 356 (5th Cir. 1993).

[8] Rec. Doc. 1 at 4.

100 million masks from China to American Safety.[9] According to American Safety, after it made multiple payments to Defendants, it "became clear . . . that the Defendants did not have the ability to provide" the masks.[10] American Safety claims that Defendants were engaged in a conspiracy and fraud with respect to the mask agreement.[11] American Safety brings state law claims for breach of contract, fraud, fraud in the inducement, violation of the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA"), conspiracy, breach of fiduciary duty, and attorney malpractice.[12]

### B. Procedural Background

American Safety filed the instant motion on October 1, 2021 and noticed it for submission on October 20, 2021.[13] Defendants did not file an opposition. Instead, on October 21, 2021, Defendants moved this Court for an extension of time to retain counsel and to respond to Plaintiff's motion.[14] This Court granted that motion and ordered Defendants to retain counsel by November 18, 2021.[15] Defendants failed to comply with this Court's order to retain counsel.[16] Instead, Defendants again moved the Court for an extension of time to respond, which this Court denied.[17]

---

[9] *Id.* at 4–5.

[10] *Id.* at 7–8.

[11] *Id.* at 4, 9–10, 11–15.

[12] *Id.* at 10–16.

[13] Rec. Docs. 74, 74-6.

[14] Rec. Doc. 84.

[15] Rec. Doc. 87.

[16] Additionally, this Court has previously ordered Defendants to retain counsel. Rec. Docs. 45, 49. Since April 2021, none of the unrepresented Defendants have complied with this Court's orders by retaining counsel.

[17] Rec. Docs. 89, 91.

Accordingly, the Court deems the motion unopposed.

## II. American Safety's Arguments in Support of the Motion for Summary Judgment

In the motion, American Safety moves the Court to find that the settlement agreement is a valid contract under Louisiana law and to enforce its provisions.[18] In support, American Safety avers that it entered a settlement agreement (the "Agreement") with Defendants in July 2021.[19] According to American Safety, in the Agreement, Defendants agreed to pay $534,066.46 to American Safety in exchange for American Safety dismissing all claims against Defendants.[20] "The Agreement provided that payment would be made on or before August 15, 2021."[21] American Safety asserts that Defendants did not pay on August 15, 2021.[22] American Safety alleges that it notified Defendants that they were in default and "informed the Defendants that they had five business days to cure the default pursuant to Section 1 of the Agreement."[23] American Safety avers that "despite repeated affirmative representations . . . that the funds were forthcoming," Defendants have failed to pay and have "affirmatively misled" American Safety about when the funds would be delivered.[24] Thus, American Safety contends that "Defendants are in breach of the Agreement."[25]

American Safety argues that the Agreement is "a valid and enforceable compromise under

---

[18] Rec. Doc. 74 at 1.

[19] Rec. Doc. 74-2 at 2.

[20] *Id.* American Safety also agreed to "assign certain rights to the settling Defendants." *Id.*

[21] *Id. See also* Rec. Doc. 74-3 at 3.

[22] Rec. Doc. 74-2 at 2.

[23] *Id. See also* Rec. Doc. 74-3 at 3.

[24] Rec. Doc. 74-2 at 2.

[25] *Id.*

Louisiana law."[26] American Safety asserts that the Agreement contains a "Louisiana choice of law provision."[27] American Safety also asserts that the Agreement was entered by the consent of the parties, that the parties had "full capacity," and that "there is no dispute that the Defendants have failed to perform their obligations."[28] Therefore, American Safety asks the Court to find the Agreement valid under Louisiana law, to enforce its provisions, and to enter judgment against Defendants in the amount of $534,066.46.[29]

### III. Legal Standard

*A.    Legal Standard for Summary Judgment*

Summary judgment is appropriate when the pleadings, discovery, and affidavits demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[30] To decide whether a genuine dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[31] All reasonable inferences are drawn in favor of the nonmoving party. Yet "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[32] If the entire record "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and, consequently, the moving party is entitled to judgment as a

---

[26] *Id.* at 3.

[27] *Id.*

[28] *Id.*

[29] *Id.* at 4.

[30] Fed. R. Civ. P. 56(a); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[31] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[32] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

matter of law.[33] The nonmoving party may not rest upon the pleadings.[34] Instead, the nonmoving party must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[35]

The party seeking summary judgment always bears the initial responsibility of showing the basis for its motion and identifying record evidence that demonstrates the absence of a genuine issue of material fact.[36] "To satisfy this burden, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element of the opponent's claim or defense."[37] If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to "identify specific evidence in the record, and to articulate" precisely how that evidence supports the nonmoving party's claims.[38] The nonmoving party must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[39]

The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory

---

[33] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[34] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[35] *See id.*; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[36] *Celotex*, 477 U.S. at 323.

[37] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991) (quoting *Little*, 939 F.2d at 1299).

[38] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[39] *Morris*, 144 F.3d at 380; *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[40] Moreover, the nonmoving party may not rest upon mere allegations or denials in its pleadings.[41] Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.

### B.     *Legal Standard for Settlement Enforcement*

"Although federal courts possess the inherent power to enforce agreements entered into in settlement of litigation, the construction and enforcement of settlement agreements is governed by the principles of state law applicable to contracts generally."[42] A federal court sitting in diversity "must apply the choice of law rules in the forum state in which the court sits."[43] Article 3537 of the Louisiana Civil Code provides that contractual issues are "governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue." Additionally, the Agreement here contains a choice of law provision that provides that it "shall be governed by and interpreted according to the laws of the State of Louisiana."[44] In Louisiana, contracts are interpreted based upon the parties' intent.[45] "The reasonable intention of the parties to a contract is to be sought by examining the words of the contract itself, and not assumed."[46] If the contract is unambiguous and does not have absurd consequences, the court applies the ordinary

---

[40] *Little*, 37 F.3d at 1075 (internal citations omitted).

[41] *Morris*, 144 F.3d at 380.

[42] *Sundown Energy, L.P. v. Haller*, 773 F.3d 606, 611 (5th Cir. 2014) (quoting *E. Energy, Inc. v. Unico Oil & Gas, Inc.*, 861 F.2d 1378, 1380 (5th Cir. 1988) (internal quotation marks omitted)).

[43] *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003).

[44] Rec. Doc. 74-3 at 5.

[45] *Prejean v. Guillory*, 2010-0740, p. 6 (La. 7/2/10); 38 So. 3d 274, 279.

[46] *Id.*

meaning of the contractual language.[47] If the contract is ambiguous, however, the court may resort to parol evidence to interpret the contract.[48]

### IV. Analysis

American Safety moves the Court to find that the Agreement is a valid contract under Louisiana law and enter judgment against Defendants in the amount of $534,066.46.[49]

As an initial matter, the Court finds that Louisiana law applies to this dispute. Article 3537 of the Louisiana Civil Code provides that contractual issues are "governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue." Here, the underlying contract for PPE was entered into in Louisiana, for the benefit of a Louisiana company—American Safety.[50] According to the Complaint, the PPE was "to be delivered to American Safety's offices in Belle Chasse, Louisiana."[51] Additionally, payment for the contract was wired from American Safety's "Louisiana bank account."[52] Accordingly, the Court finds that Louisiana's policies would be most seriously impaired if its law were not applied to this issue.

"Four elements are necessary for formation of a contract in Louisiana: (1) capacity, (2) consent, (3) certain object, and (4) lawful cause."[53] All persons are presumed to have capacity to contract.[54] Consent requires that there be a meeting of the minds of the parties through an offer

---

[47] *Id.*

[48] *Id.*

[49] Rec. Doc. 74-2.

[50] Rec. Doc. 1 at 1–2.

[51] *Id.* at 7.

[52] *Id.*

[53] *Philips v. Berner*, 2000-0103, p. 5 (La. App. 4 Cir. 5/16/01); 789 So. 2d 41, 45 (citing *Leger v. Tyson Foods, Inc.*, 95–1055 (La. App. 3 Cir. 1/31/96), 670 So. 2d 397).

[54] La. Civ. Code art. 1918. *See also Herbert & Lula Marie Fusilier Revocable Living Trust v. EnLink NGL*

8

and acceptance.[55] Acceptance must be made in the form prescribed by law, and settlement agreements must be in writing.[56] The object of a contract must be "lawful, possible, and determined or determinable."[57] "Cause is the reason why a party obligates himself."[58]

Here, the undisputed evidence establishes that the Agreement is a valid contract under Louisiana law. The Agreement was reduced to writing as required by article 3072 of the Louisiana Civil Code.[59] The parties to the contract indicated their acceptance by signing the Agreement.[60] In so signing, each party represented that they had "full capacity, power, and authority" to enter the Agreement.[61] The object of the Agreement is certain because Defendants agreed to pay a sum of money in exchange for American Safety dismissing the claims in this litigation.[62] Finally, the cause of the contract is lawful because settlement agreements are authorized by article 3071 of the Louisiana Civil Code.

The undisputed evidence also establishes that Defendants are in default of the Agreement.

---

*Pipeline, LP*, 2017-33, p. 4 (La. App. 3 Cir. 5/24/17); 220 So. 3d 904, 908 ("[U]nless one of these three special exceptions is shown to apply, all persons are presumed to have the capacity to contract."); *Skannal v. Bamburg*, 44,820, p. 14 (La. App. 2 Cir. 1/27/10); 33 So. 3d 227, 236 ("The presumption is that all persons have capacity to contract; lack of capacity must be shown by clear and convincing evidence."); *In re Adoption of Smith*, 578 So. 2d 988, 992 (La. App. 4 Cir. 1991) ("The presumption is that all persons have the capacity to contract.").

[55] La. Civ. Code art. 1927. *See also Ricky's Diesel Serv., Inc. v. Pinell*, 2004–0202, p. 4 (La. App. 1 Cir. 2/11/05); 906 So. 2d 536, 538.

[56] La. Civ. Code arts. 1927, 3072.

[57] *Id.* art. 1971.

[58] *Id.* art. 1967.

[59] *See* Rec. Doc. 74-3.

[60] *Id.* at 7–10.

[61] *Id.* at 6. Lack of capacity must be shown by clear and convincing evidence, and no party has put forth any evidence to dispute the presumption of capacity. *See Skannal*, 44,820 at p. 14; 33 So. 3d at 236.

[62] Rec. Doc. 74-3 at 3.

Section One of the Agreement provides that Defendants must pay the settlement amount "[o]n or before August 15, 2021."[63] Section One further provides that if Defendants fail to pay, American Safety will notify them "via electronic mail and [Defendants] shall be allowed five business days following such notice to cure the default."[64]

American Safety emailed Defendants on August 13, 2021 reminding Defendants of the payment deadline.[65] Defendants replied and assured American Safety that it that "[e]verything is in motion" and that American Safety "[would] be receiving funds timely."[66] On August 16, 2021 at 8:56 AM, American Safety notified Defendants via email that the funds were not received and that Defendants were in default pursuant to the Agreement.[67] Six minutes later, Defendants replied and acknowledged receipt of American Safety's email, again assuring American Safety that payment "was put in motion" and that payment was forthcoming.[68] Two days later, on August 18, 2021, American Safety again notified Defendants that payment was not received.[69] Defendants replied and assured American Safety that the funds would be received "shortly."[70] On August 20, 2021, American Safety notified Defendants that it was their last day to cure the default pursuant to the Agreement.[71] Once more, Defendants assured American Safety that "the funds have been

---

[63] *Id.*

[64] *Id.*

[65] Rec. Doc. 74-4 at 1.

[66] *Id.*

[67] *Id.* at 3.

[68] *Id.* at 4.

[69] *Id.* at 6.

[70] *Id.*

[71] *Id.* at 7.

sent."[72] The undisputed evidence establishes that no funds have been transferred to American Safety. Therefore, Defendants remain in default of the Agreement. Accordingly, because there are no material facts in dispute, the Court will enforce the Agreement and enter judgment in favor of American Safety and against Defendants in the amount of $534,066.46.

## V. Conclusion

For the reasons set forth above, the undisputed evidence establishes that the Agreement is a valid contract under Louisiana law. The undisputed evidence also establishes that Defendants are in default of the Agreement. Therefore, because there are no material facts in dispute, the Court will grant summary judgment in favor of Plaintiff, enforce the agreement, and enter judgment in the amount of $534,066.46. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff American Safety, LLC's "Motion for Summary Judgment and to Enforce Settlement Agreement"[73] is **GRANTED**.

**NEW ORLEANS, LOUISIANA**, this 20th day of December, 2021.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[72] *Id.*

[73] Rec. Doc. 65.